Appellant Jason Davis is appealing the decision of the Alliance Municipal Court that denied his motion to dismiss and suppress the evidence and found him guilty of drug abuse, possession of drug paraphernalia and consumption/possession by minor. The following facts give rise to this appeal.
On September 4, 1998, just after midnight, Officers David McElhaney and James Hilles responded to a loud noise/disturbance call at 1121 S. Arch Street. Upon arriving, the officers heard loud music coming from the residence and approached the front porch. At the suppression hearing, Officer McElhaney testified he knocked on the front door. Tr. at 7. However, Officer Hilles testified Officer McElhaney did not knock on the front door. Tr. at 21, 25. Officer Hilles stated he was the only person to knock on the front door for approximately fifteen to twenty seconds. Tr. at 20, 22, 24-25. Nobody inside the residence responded to the knock on the door.
As Officer Hilles knocked on the front door, Officer McElhaney, while standing on the front porch, looked through a large picture window located next to the front porch door. Based on the testimony presented at the suppression hearing, it is unclear what type of covering was on the picture window, however, everyone testified the curtain was sheer and "see through" and allowed anyone standing on the front porch to look through the curtain or around the edges for a clear view of the occupants.
While peering through the picture window, Officer McElhaney saw appellant raise a water bong to his mouth, light the water bong with a lighter and proceed to smoke. After observing appellant's conduct and after receiving no response from the knock on the door, the officers proceeded to enter the residence and announced their presence. Officer McElhaney observed appellant place the water bong to the right side of his chair. The officers also noticed the burning smell of marijuana and found multiple cans of beer situated in and around the room where appellant and several other persons were seated. Officer McElhaney testified that after entering the residence, he got consent from the owner of the residence to search the room.
On September 4, 1998, appellant entered a plea of not guilty to all charges. Appellant filed a motion to dismiss and suppress the evidence on October 5, 1998. The trial court denied appellant's motion on October 23, 1998. Thereafter, on November 6, 1998, appellant entered a plea of no contest, to the charges, and the trial court found him guilty and sentenced him accordingly.
Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 I. THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO DISMISS AND/OR SUPPRESS THE EVIDENCE IN THAT THE OFFICER (SIC) ACTIONS OF STANDING ON THE FRONT PORCH OF PRIVATE RESIDENCE, PEERING THROUGH A WINDOW CURTAIN, KNOCKING BUT FAILING TO WAIT FOR A REPLY AND THEREAFTER ENTERING THE RESIDENCE WITHOUT A WARRANT OR THE CONSENT (SIC) THE RESIDENTS VIOLATED THE REASONABLE EXPECTATIONS OF PRIVACY OF RESIDENTS AND THEIR GUESTS.
 I
In his sole assignment of error, appellant contends the trial court should have granted his motion to dismiss and suppress the evidence obtained as the result of an illegal search that violated the reasonable expectation of privacy of the residents and their guests. We disagree.
Appellant claims the trial court incorrectly decided the ultimate issue raised in his motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; Statev. Claytor (1993), 85 Ohio App.3d 623, 627, and State v.Guysinger (1993), 86 Ohio App.3d 592, 594. It is based on this standard that we review appellant's sole assignment of error.
Appellant's argument focuses on the fact that the officers did not have a search warrant when they entered the premises. However, the fact that the officers did not have a search warrant when they entered the premises does not automatically establish a Fourth Amendment violation. In order to enter without a search warrant, one of the following judicially recognized exceptions must apply:
1. A search incident to a lawful arrest;
 2. Consent thereby signifying a waiver of their constitutional rights;
3. The stop and frisk doctrine;
4. Hot pursuit;
 5. Probable cause to search and the presence of exigent circumstances; or
 6. The plain view doctrine. State v. Akron Airport Post 8975 (1985), 19 Ohio St.3d 49, 51.
The applicable exception to the search warrant requirement, in the case sub judice, is the plain view doctrine. Under the plain view doctrine, "* * * an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was immediately apparent' that the item was incriminating." State v. Waddy (1992),63 Ohio St.3d 424, 442, reversed on other grounds (1997), 80 Ohio St.3d 89. "The 'immediately apparent' requirement * * * is satisfied when police have probable cause to associate an object with criminal activity." Waddy at 442, citing State v.Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus.
Under the plain view doctrine, we must first determine whether the initial intrusion leading to the item's discovery was lawful. Appellant challenges the fact that Officer McElhaney observed him smoking marijuana while looking through the picture window of the residence. Officer McElhaney was at the residence due to a loud noise/disturbance call. "Police are privileged to go upon private property when in the proper exercise of their duties." State v. lsrael (Sept. 26, 1997), Hamilton App. No. C-961006, unreported, at 3.
We further find Officer McElhaney's peering into the picture window to be a lawful view. The matter currently before the court contains facts similar to those presented in theIsrael case. In Israel, officers went to an address to confirm the identity of the defendant. Id. at 1. Officers knocked on the front door, but nobody answered, although officers heard "scurrying" in the house. Id. Two officers then went to the side door. Id. One officer testified he saw a large amount of marijuana, in plain view, on the kitchen table, through the glass in the side door. Id. The other officer testified that he saw the marijuana on the table as he was standing on an angle, peering into the kitchen through the glass in the side door.Id. Appellant subsequently filed a motion to suppress which the trial court overruled. Id. at 2.
The defendant appealed and raised the issue of the officers peering through the side door into the kitchen. On appeal, the First District Court of Appeals determined the officers lawfully viewed the marijuana while looking through the glass in the side door. Id. at 4. In reaching this conclusion, the court stated:
 Not every observation made by a law enforcement officer, even if intended to expose criminal activity, constitutes a search within the meaning of the Fourth Amendment. (Fn 6 omitted.) A 'search' occurs when the state infringes on an expectation of privacy that society considers reasonable. (Fn 7 omitted.) A person loses an expectation of privacy in those things that he voluntarily exposes to the public, even if those things are in his home. (Fn 8 omitted.) A law enforcement officer's observation of activities or things that are in plain view, from a vantage point where he has a right to be, does not constitute a search for purposes of the Fourth Amendment. (Fn 9 omitted.) Id. at 3.
The court concluded the search was legal because police are free to observe whatever may be seen from a place where they are entitled to be even though the officer stood at an angle and peered in the window. Id. at 4. See Florida v. Riley
(1989), 488 U.S. 445. The court also noted the side door was plainly visible from the street and the police did not intrude in any markedly private area within the curtilage of the house.Id.
Similarly, in the case sub judice, Officers McElhaney and Hilles were lawfully on the premises. Officer McElhaney made an observation from a vantage point where he had a right to be and was free to observe whatever he could see from his location on the front porch. Further, the fact that the picture window had a curtain over it does not change the result in this case. Everyone that testified at the hearing on appellant's motion to dismiss and suppress stated the curtain is sheer enough to see through.
The next issue we must address, under the plain view doctrine, is whether it was immediately apparent the item seized was incriminating. Officer McElhaney observed appellant smoking marijuana from a water bong. Clearly, the incriminating nature of a water bong is immediately apparent and Officer McElhaney had probable cause to associate the water bong with criminal activity.
Accordingly, under the plain view doctrine, we find the trial court properly denied appellant's motion to dismiss and suppress.
Appellant's sole assignment of error is overruled.
For the foregoing reasons, the judgment of the Alliance Municipal Court, Stark County, Ohio, is hereby affirmed.
By: Wise, P. J., Gwin, J., and Hoffman, J., concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment Alliance Municipal Court, Stark County, Ohio, is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES